Thank you. May it please the Court. You can take your mask. May it please the Court. My name is Christopher Landrigan. I represent the petitioner in this case, Joseph Valles. I'd like to first address the relation between Mr. Valles' performance plan and the charge of failure to follow instructions. When a performance plan that establishes expectations for completing routine, repetitive, complex tasks. Let's assume that the deciding official on the board erred in not considering his evaluation in connection with the charge and the penalty. We only set aside decisions if there's harmless error. With respect to the charge, it seems to me that your client has admitted all the facts relating to the charge. I don't understand under those circumstances how it could be harmful error not to consider the evaluation since there's no real dispute about the facts. Let's put to one side the question of the penalty, but just in terms of whether the charge was established. I just don't see where there's an issue here. Mr. Valles would not dispute those instances of errors, but what we would dispute is that when a performance plan specifically recognizes, anticipates, and allows that he is going to make some error in adjudicating between 14 and 16 applications at his desk per hour, that the agency has to prove more than simply a few instances of error. The agency would have to prove that he committed a different type of error than his plan specifically allows or that he committed more than the number of errors that the plan specifically allows. Why is that so? That's not part of the charge. The charge doesn't say he committed more errors than most people. So the charge was based on a series of instructions, all of which relate directly to his performance expectations. Complete adjudication. And there's no issue that he failed to comply with the instructions, right? We would say that those instructions to complete these tasks, so long as it's in this situation, when you have routine tasks that you're completing many of per hour, an instruction such as complete these as soon as possible, that was the instruction, or promptly, appropriately, properly, implicitly includes a recognition that you're going to make some error while doing so. Otherwise, it would make the performance plan pointless. The performance plan sets out production rates, very detailed production rates of how many you have to accomplish per hour in different settings. Before we keep going with the performance review, Mr. Valis was previously disciplined for failure to follow instructions, right? Correct. And was there any objection to disciplining him for failure to follow instructions that time because somehow those were things that related to his performance plan? As I understand it, the specifications there of failure to follow instructions are very similar to the ones that we have in front of us here. You're absolutely right. Three specifications along the same lines. Our argument would have applied to that. We note that it was a five-day suspension, so he's unable to appeal that to the Merit Systems Protection Board. In response to that suspension, he did raise on his own accord a similar issue, that those were unintentional mistakes. And so he simply doesn't have the form to be able to adjudicate that issue. But our argument would apply to a situation like that, where our point would be that if you give somebody a performance plan, says you give specific production rates, average rates of adjudications, and says that you can make so much error when doing so, then looking at the person's performance and identifying just instances of delay or an error doesn't prove that you weren't doing them as soon as possible or promptly and appropriately. You were meeting your performance expectations. Otherwise, again, the plan would be pointless. Well, I'm getting a little lost. You seem to be arguing two things. One is instructing someone to do some tasks as soon as possible is either not clear enough or already assumes that there's going to be a little bit of error that takes place. And then a separate argument you're making is, well, you can't possibly discipline someone on conduct-based grounds when these matters overlap with things that are contemplated in a performance plan. Our argument would only apply, agree that the instruction generally, complete this as soon as possible. We are not arguing that that's always vague in any context. I imagine in most contexts it's actually fairly clear. Well, our argument only applies to when that person is given a performance plan that sets out specific adjudication production rates. When you say as soon as possible, it's reasonable to then, in that specific instance, understand that instruction as meaning I need to meet the performance rates, in which he did. We did during the time in which his conduct is being evaluated. So you're completing, again, 14 to 16 applications per hour at your desk, and that's your expectation. You're meeting that. A supervisor generally reminds you to do them as soon as possible. Then you would reasonably understand that that would mean meet your production rates. Do 14 to 16 per hour at my desk, or I think it was 6 to 9 at the public counter. He was doing that. It would be completely pointless to set out production rates and essentially say that that's what we mean by doing them properly. He wasn't charged with failure to meet the production rates. He was charged with specific instances where he failed to follow instructions. Let's assume for the moment that we conclude that any error, if there was one, with respect to consideration of the evaluation was harmless with respect to the proof of the charge, and that the charge was proven. Turn to the penalty and tell us why the treatment of the evaluation was harmful error, in your view, with respect to the penalty determination. It was absolutely harmful, particularly given that the deciding official relied on the fact that he believed management had lost trust in Ballas' performance. The deciding official admitted that he did not read the salient portions of this performance appraisal, which stated that Ballas was helping to assist the Colorado Passport Agency meet its goals in 2019, and that management looked forward to his continued progress and development in 2019. We'd also argue the performance plan as a whole rebutts the idea that the deciding official mentioned a phrase that his repeated misconduct was suggestive of intentionality. If he's referring to the prior suspensions, the one suspension regarding just a handful of issues happened in the beginning of 2018. Then the performance review kicks in. Two progress reviews, both positive, and then a performance review for the entire year of 2018 was successful. So, if anything, it's demonstrating the opposite intent. But half of the instances, this issue about the performance evaluation relates only to charge one. And with respect to charge one, it relates to only half of the specifications, correct? I believe it relates, depending on, it was issued in February 2019. And so all those qualitative comments would apply. It was only, I believe, two instances. But, right, there would be a little over half in charge one. But the relevance to the penalty would not be limited to charge one at all. Following internal control processes, such as the adjudication stamp issue or the application on the photocopier, those are still looked at through your performance appraisal. It discusses how you maintain internal control processes. Any past those? Where did you argue in your brief that the performance evaluation related to the other charges in terms of the penalty? Maybe I missed it. I thought that the argument was exclusively directed to the impact on the significance of charge one. And I'm sorry if it was unclear. We're limiting our argument that the performance plan proves that charge one is unsupported. So we're limiting the plan as far as the proof of the charge. But we were not limiting the argument that the plan generally proves that the penalty was reasonable. As we would argue in that section of the brief. Does it have any bearing on the penalty other than, in your view, suggesting that some of the specifications in charge one were less serious than the administrative judge and the deciding official thought they were? And I would actually argue that there's two errors with respect to the penalty. One, that the performance appraisal would show that these errors were not the type. And I went over my time. If you don't mind me finishing the answer. Were not the type that would rise to level of seriousness warning or removal. But the other part of the issue of the commonplace nature of the errors was that the board disregarded that evidence because it looked at it only under a disparate treatment analysis. As in, if VALS could produce a person who was charged with the same number of charges. I understand that argument. But I'm just wondering, is that error? If it was an error, harmful error. Absolutely. What is the evidence that it would have come out differently on the penalty if they'd given weight to the performance evaluation? Certainly in combination with the commonplace nature. But because the deciding official relied heavily on the fact that management had lost trust in VALS and that his misconduct was suggestive of intentionality. That he couldn't be rehabilitated where the performance appraisal shows that this is a person who's not only trying to meet his expectations as a passport specialist. But he was doing so. And he should be given the opportunity to continue to do so. Thank you. I'll reserve time. Unless my colleagues have any questions. All right. Thank you. Thank you. Mr. Helmut. We'll give you two minutes for rebuttal. Good morning, your honors. And may it please the court. The court should affirm the agency's removal of Mr. VALS here because it is supported by substantial evidence and the penalty determination was reasonable. Okay. But it seems to me there's a pretty good argument that the board erred in dismissing the relevance of the performance evaluation as being somehow irrelevant to the charge. That's difficult to make sense of, frankly. Let's assume for the moment that we were to conclude that that was error. Is it harmful error? I want to make sure I understand your question. With respect to the performance evaluation, are you addressing the first prong, the charges, or the reasonableness? Well, I was asking about both. I mean, it seems to me that they are arguing that it was harmful error both with respect to the charge, the determination of the charge, and to the penalty. And with respect to the penalty, they're basically saying these incidents that happened in 2018, about half of the incidents that formed the basis for charge one, weren't all that serious because they weren't even mentioned in the performance evaluation. And the performance evaluation said that he was performing fully satisfactorily. Right. Okay. So with respect to the impact of the performance evaluation and your Honor's assumption that the board did err in not considering it, the performance evaluation doesn't cover, first of all, all of the specifications. So there's at least seven, some under charge one and one under charge three, that fall outside the time range of that. So it wouldn't even be relevant to those. It was not harmful error to not consider it for the first prong of the evaluation, whether the charge conduct occurred, because Mr. Valles seems to view this as a Chapter 43 performance removal, but it's not. It's a Chapter 75 for cause removal. And those can be based on performance. And the Lovshin case... It can't be that someone is performing fully successfully if he refuses to follow instructions, right? The performance review doesn't capture all the aspects of his job. It's got to be relevant to the performance review. I mean, you can remove somebody for failure to follow instructions under Chapter 43, can't you? You would have to follow a different process. You would have to put them on a performance improvement plan. That's to say that's what you do under Chapter 43. Right. But you could say someone should be removed for poor performance under Chapter 43 for failure to follow instructions, correct? Yes, yes, you can. Sure. Yeah. But the failure of the performance review to note these things doesn't create harm in the removal. Again, because under Chapter 75, you look at whether the charge conduct occurred and was proven, and here it was. And so the fact that the performance review may have gone too easy on Mr. Weiss. And I think he can argue that maybe he wasn't on notice. And if he didn't have the prior suspensions, for instance, you could say, you know, this is unfair because I didn't know that I was supposed to follow instructions and being removed for failure to follow instructions. But my performance plan doesn't say anything about that. But that's not – that's a different argument. Okay. So let's assume that it's harmless error with respect to the purpose of the charge because they're not really disputing that these events happened with respect to the specifications in 2018. What about its relevance to the penalty? Because doesn't it suggest that these incidents, assuming that they happened, weren't that serious because they were not treated as serious in the performance evaluation? It is one of the factors that would be considered in the penalty determination. And on a blank slate, I think it may be a different case. If this was the first instance of discipline for Mr. Valas, if this – the only thing he – if he had sort of an unblemished record in a performance review and then the agency is saying, well, these are removable charges, I think that would be a different argument. Here the board did consider his years of federal service and his otherwise acceptable performance, satisfactory performance. But it just – it was outweighed by the two prior suspensions. It was outweighed by other factors. And I just briefly want to point out it's not that he was failing to meet his production rates. It's that he was failing to follow the workflow, which may not necessarily be true. He was not doing what he was told to do. He was not – he was repeatedly not doing what he was told to do, and that was having an impact. But it wasn't the sort of thing where he was unable to process the applications because of the substance of the applications. He wasn't properly updating the tracking system. He wasn't – he was putting things – taking things out without noting them, putting things back without having finished them, which has an impact on the rest of the passport adjudication office. And I think, again, the nexus part was established and not contested. So it's not that he's struggling to keep up processing the applications and his performance review says, well, you're doing fine, but then he gets removed for not keeping up his production rates. The production rates aren't at issue here. It's more the failure to follow – to properly cashier. Okay, but their argument is if these failure to follow instructions, the 2018 specifications in Charge 1, were serious or significant, they would have been mentioned in the performance evaluation. The fact that they weren't mentioned in the performance evaluation suggests that they weren't that serious. That supports our notion that the penalty of removal was unreasonable. That is what I understand the argument to be. What's your response to that? The response is twofold, Judge Dike. One, standing alone, each charge may not have been serious enough to merit a mention in the performance review, but combined and exceeding the duration of the performance review – there are several specifications after that – the aggregation of those creates more of a serious infraction for Charge 1. But there are also three other charges, including non-performance-based charges. Following up on Judge Dike's question, I mean, you can see our concern from our perspective that if all of the specifications identified that occurred in 2018 really were serious problems, certainly the combination of all of them creating a pattern of a problem, it somehow would have been reflected in his performance review for 2018. And so that's a concern with, by my count, six of the 11 specifications to support Charge 1. But even putting aside those six specifications, there are still five other specifications to support Charge 1 that were adopted below, and those all occurred in 2019. And so, therefore, on the record, there is no conflict for those specifications with any performance review. And I guess what I'm wondering is, if we only looked at the 2019 actions that led to those five specifications to support Charge 1, is there anything in the record that would suggest that the deciding official would have done something different than have the removal penalty here in light of five specifications supporting Charge 1 instead of 11 specifications supporting Charge 1? And in the context of the fact that Mr. Valis had been suspended twice before for various different reasons. There's nothing in the record to suggest that the deciding official would have gone with a lesser penalty if only five of those specifications were sustained for Charge 1. And to point out, you only need one specification of many to support a charge. I think we argued that in our brief with respect to Charge 3, because Mr. Valis doesn't even dispute Specification 5 under that charge. And so as long as there's one specification that's found to be supported, that charge is sustained. And here, the pattern and the prior suspensions were essentially the same type of infraction, a failure to follow procedure and to move these cases to properly account for the case handling because they don't want to lose sight of these passport applications. Those were the same types of charges that led to his five-day suspension. They were the same types of charges that occurred in 2019. And they're similar to the charges that occurred in 2018 that were not mentioned in the performance review. That performance review, for whatever reason, chose not to mention them. But the combination of them is sort of the repeated pattern is what the deciding official looked at when he considered one of the factors, rehabilitation, and concluded reasonably that based on Mr. Valis' track record, he's not capable, for whatever reason, intentional or not, and we're not arguing intentionality and we don't have to establish intentionality, but for whatever reason, Mr. Valis has shown that he is incapable of following instructions such that— and just minimized his actions. And so those were reasons why, ultimately, management lost confidence in him. There is testimony in the record of that, Your Honor, that— there's testimony from his supervisors that other individuals have made similar types of mistakes, but after one mistake, they correct it and they no longer make those mistakes,  So it's sort of a question of who has the burden here under our decision in La Chance. You know, as you pointed out, there's no testimony that these five or six instances from 2018 were critical in his determination. On the other hand, there's no testimony the other way. In fact, he specifically declined to address whether the charges would have been sustained or the penalty would have been sustained if one of the charges had been eliminated. So who has the burden here to show that the six 2018 specifications wouldn't have made a difference in terms of the penalty or would have made a difference in terms of the penalty? I think Mr. Valis has the burden to show that any error was harmful. Here, the deciding official—and again, we're talking not just about the six specifications of Charge 1. We're talking about other charges, including charges that wouldn't— the charge of having the wine glass and the inappropriate conduct doesn't seem to— no one disputes that that falls anywhere near the performance review issue. And so this court doesn't—this court reviews the penalty determinations. What case has the burdens on him to show that it's harmful? I'm not recalling a case off the top of my head that says that the— I think this court's precedent generally puts the burden on the party claiming harmful error to demonstrate that it's harmful, but I'm not recalling a specific case name. Okay. If this court has no further questions, we respectfully request that the decision below be affirmed. Okay. Thank you. Thank you. Mr. Landrigan, you've got two minutes. Thank you, Your Honor. I'd like to first note the deciding official testified that he did not know what penalty that he would choose if even one specification was not supported. I'd also like to point out to the point of if we're splitting it at the six and five, certainly if six specifications of these type of failure to follow instructions didn't warrant discussion in his performance appraisal, we don't understand why five would. And it goes to our point of there's a certain amount of error or delay that's reasonably anticipated and allowed. The performance appraisal, again, goes to the reasonableness of the penalty, but I'd also like to focus as well on we not only show that the performance appraisal shows that these were minor issues not warranting removal. The record also shows that these were, in fact, commonplace. You didn't hear it just from Valis. There was a passport specialist who served for both of them 10 years who talked about the commonplace nature and not just of the errors in adjudication, but the other issues, leaving an adjudication stamp. There's testimony that it was left unsecured every day at the public counter, which wasn't even alleged here, and that the ramifications for that were minor. Mr. Landrigan? Yes. It's Judge Lind. Do you dispute what Mr. Hellman said about the burden to show harmful error being on Valis? We do. Our burden is to show that the decision was arbitrary, capricious, unsupported by substantial evidence. This court has the authority to remand to the board if they find error and for the board to correct it. But whose burden is it to show that any error was harmful? Isn't that Mr. Valis' burden? Harmful in the sense that it could have led to a different result. This court has remanded when there is legal error for the board to make a decision as to what impact that error would have. So I don't believe we have the burden to show particularly that the penalty would have definitely warranted mitigation. This court has remanded for the board to make appropriate penalty determinations in the past in many cases. All right. Thank you. Thank you. Okay. Thank both counsel. The case is submitted. Thank you. Our next case is number 20-2347, First Base Co., Limited vs. Apple Inc. Thank you.